UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

LEDUC GIFTS & SPECIALTY            CIVIL NO. 15-2743 (JRT/DTS)
PRODUCTS, LLC,
*d/b/a Signature USA,*

      Plaintiff,

v.

DANIEL SACHS,
DSC PRODUCTS, INC. and
DSC PRODUCTS HOLDING, LLC,

      Defendants.

---

4BRAVA, LLC,                        CIVIL NO. 15-2744 (JRT/DTS)

      Plaintiff,

v.

DANIEL SACHS,
DSC PRODUCTS, INC. and
DSC PRODUCTS HOLDING, LLC,

      Defendants.

---

REPORT AND RECOMMENDATION

---

## I.    INTRODUCTION

The above matters came before the undersigned on May 24, 2017 and June 16, 2017 upon Plaintiffs' Motions for Contempt and Partnership Asset Protection Order [Civil No. 15-2743, Docket No. 184; Civil No. 15-2744, Docket No. 172], which was referred by the District Court for a Report and Recommendation pursuant to 28 U.S.C.

§ 636(b)(1)(B), and on the Court's *sua sponte* Orders to Show Cause [Civil No. 15-2743, Docket Nos. 213, 219; Civil No. 15-2744, Docket Nos. 208, 212] why Defendants and/or their counsel should not be held in contempt of court.[1]  Due to the deliberate non-appearance on May 24, 2017 by Defendant Daniel Sachs, both individually and in his capacity as an officer and/or member of Defendants DSC Products, Inc. and DSC Products Holding, LLC, the matter was continued for additional proceedings on June 16, 2017.

Appearances:   May 24, 2017 hearing: Adrianna Shannon, Esq. on behalf of Plaintiffs; Malte L. L. Farnaes, Esq. and Troy J. Hutchinson, Esq. appeared on behalf of Defendants and themselves.   Defendant Daniel Sachs did not appear as ordered.  June 16, 2017 hearing:  Adrianna Shannon, Esq. and Bonnie M. Smith, Esq. on behalf of Plaintiffs; Daniel N. Rosen, Esq. on behalf of Defendants; Bryan R. Feldhaus, Esq. and Troy J. Hutchinson, Esq. were present in the courtroom; and Malte L. L. Farnaes, Esq. was present at the hearing via telephone.   Defendant Daniel Sachs appeared in person.

## II.    BACKGROUND

The above two cases involve Three Two Eight, LLC ("Three Two Eight"), a business venture created by the parties to sell tumblers to retailers such as Walmart. [Civil 15-2743, Docket No. 161 at 2].   One half of the venture consists of Plaintiffs Bruce, Jennea, and Marcellas LeDuc ("The LeDucs") and their companies, LeDuc Gifts & Specialty Products, LLC, d/b/a Signature USA ("Signature") and 4Brava, LLC

---

[1]     On May 24, 2017, the Court also heard argument on Malte L. L. Farnaes and Troy J. Hutchinson's Motions to Withdraw as Counsel for Defendants [Civil No. 15-2743, Docket Nos. 173, 174; Civil No. 15-2744, Docket Nos. 161, 162].  Those motions will be addressed in a separate Order.

("4Brava")(collectively, "Plaintiffs"). *Id.* The other half consists of Daniel Sachs ("Sachs") and his companies, DSC Products, Inc. ("DSC Products") and DSC Products Holding, LLC ("Holding LLC"). *Id.*

In 2014, Sachs and the LeDucs designed and sold their first wave of tumblers to Walmart. [Civil 15-2743, Docket No. 161 at 3-5]. Later that year they prepared a second design of tumbler molds for production and sale. Sachs claims he purchased the second mold design from the LeDucs between April 2014 and September 2014. *Id.* at 6. The LeDucs dispute that they sold the mold design to Sachs, contending it was owned by Three Two Eight. *Id.* at 6-7.[2]

In November 2014, Sachs and the LeDucs created Three Two Eight to facilitate the sale of tumblers to Walmart in a "separate company which would be established to share both the costs and the profits equally." [Civil 15-2743, Docket No. 161 at 8]. Three Two Eight consisted of two LLCs created specifically to represent each party's respective interest; the LeDucs' 4Brava LLC and Sachs's DSC Products Holding, LLC. *Id.* Three Two Eight was registered and incorporated in Minnesota on November 26, 2014. *Id.*

Disputes over payments and reimbursements began almost immediately and continued over the next six months. [Civil 15-2743, Docket No. 161 at 9-15]. On May 27, 2015, Jennea LeDuc emailed Sachs notice of a meeting to dissolve Three Two Eight, to which she received no response. *Id.* at 16-17. With Plaintiffs suffering

---

[2]    Unbeknownst to Plaintiffs, Sachs sold the molds to a Texas company, New Thermo-Serv, LLC in early October 2016. This sale was not disclosed to Plaintiffs during discovery, and only became known when it was disclosed by Defendants' counsel under order from this Court in connection with these contempt proceedings. Defendants' counsel had not previously disclosed this information despite their own knowledge of it at the time of sale [Tr. 5/24/17 at pp. 76-78; Docket No. 232, Ex. 8].

mounting debts and a continued inability to procure their share of the revenue from the tumbler sales, Plaintiffs brought suit on June 3, 2015 alleging Defendants committed misrepresentation, fraud, embezzlement, unlawful distribution, civil theft, tortious interference with contract, and unjust enrichment.[3] [Civil 15-2743, Docket No. 1, Attachment 1].

On August 15, 2016, Plaintiffs brought Motions for Summary Judgment. [Civil 15-2743, Docket No. 112; Civil 15-2744, Docket No. 102]. On March 30, 2017, Chief Judge John R. Tunheim ruled on the motions holding, in relevant part, that Defendants were jointly and severally liable as alter egos of one another, that Defendants were to reimburse Plaintiffs and other creditors for their contributions to Three Two Eight, and that Three Two Eight was henceforth dissolved and needed to be wound up and terminated. [Civil 15-2744, Docket No. 131 at 58-59]. Termination papers for Three Two Eight were ordered to be filed no later than June 30, 2017. *Id.* at 59. Summary judgment was denied as to Plaintiffs' fraud, unlawful distribution, civil theft and unjust enrichment claims, which were then set for trial on June 12, 2017. *Id.* at 58.

On April 21, 2017, Plaintiffs moved (1) to compel discovery; (2) for sanctions; and (3) for subpoena authority, seeking to obtain what Plaintiffs considered incomplete discovery, as well as seeking the authority to issue subpoenas necessary to windup Three Two Eight. [Civil 15-2744, Docket No. 149]. On May 4, 2017, this Court granted

---

[3]    Unbeknownst to Plaintiffs, and despite being a named Defendant in the suit, Holding LLC filed dissolution papers on October 29, 2015. Defendants informed neither the Court nor Plaintiffs of this dissolution until May 2017, and then, again, only in response to the Court's inquiries in connection with the contempt proceedings and order for settlement conference.

the Motion, ordering Defendants to produce the requested discovery within two weeks under threat of a contempt finding. [Civil 15-2744, Docket No. 160].

On May 5, 2017, Defendants' attorneys, Malte L. L. Farnaes ("Farnaes") and Troy J. Hutchinson ("Hutchinson") and their respective law firms, moved to Withdraw as Counsel of Record Without Substitution, asserting they had "an impossible conflict between their ethical and professional obligations to Defendants and [their ethical obligations to] the opposing party and counsel." [Civil 15-2744, Dockets No. 161, 162; 164 at 2; 168 at 2].

On May 10, 2017, Plaintiffs moved for an order for Contempt and Partnership Asset Protection. [Civil 15-2743, Docket No.184; Civil 15-2744, Docket No. 172]. That same day, this Court ordered a hearing on all pending motions to coincide with a settlement conference to occur on May 24, 2017, a date agreed upon in advance by the parties and their counsel. [Civil 15-2744, Docket No. 181]. All parties, including Sachs, were ordered to attend the settlement conference. *Id.* On May 16, 2017, Hutchinson informed the Court that Sachs had filed personal bankruptcy the day before, and that Bruno Flores, Esq. was handling the bankruptcy proceedings. [Civil 15-2744, Docket No. 193].

On May 17, 2017, the Court conducted a telephonic status conference to determine whether Defendants had complied with this Court's May 4 Order for production of documents, and to ascertain the parties' views regarding the effect of Sachs's personal bankruptcy on the impending trial.[4]   During this hearing, and in

---

[4]     Despite clear direction from the Court that all persons on the call identify themselves, Sachs remained mute, surreptitiously monitoring the court hearing without disclosing his presence.  [Tr. 5/17/17 at p. 3; Tr. 6/16/17 at p. 28].

response to direct questions by the Court, Farnaes disclosed that he had "one" document in his possession responsive to Plaintiffs' discovery requests that was within the scope of this Court's May 4, 2017 Order that had not been produced.  He further informed the Court that Sachs had instructed him not to produce the document.[5] [Tr. 5/24/17 at p. 45; Tr. 6/16/17 at p. 48].  Hutchinson represented to the Court that he had no documents in his possession covered by the Court's Orders. [6]

On May 19, 2017, this Court ordered Defendants to pay Plaintiffs' attorney's fees and costs, totaling $7,700.05, incurred in bringing their April 21 motion to compel. Because Sachs had filed for personal bankruptcy protection, the Court limited its order for payment of fees to DSC Products and Holding LLC. [Civil 15-274, Docket No. 198]. Those fees and costs were ordered to be paid on or before May 26, but Defendants did not pay them.  [Tr. 6/16/17 at p. 68].  Subsequent to the June 16, 2017 hearing, Sachs paid the attorney's fees, thereby purging himself of his contempt of the May 19, 2017 Order.

The hearing on all pending motions was initially held on May 24, 2017. Despite the Court's order to appear, Sachs did not attend. Sachs directed his counsel to inform the Court that he was unable to attend because he was caring for his ailing father, but provided no evidence to substantiate that claim. [Tr. 5/24/17 at p. 5].  As it turned out, Sachs's true reason for not appearing was his belief that he was not required to appear

---

[5]    As it turned out, Farnaes had several documents comprising 97 pages, which included drafts of the Asset Purchase Agreement with New Thermo-Serv for sale of the molds.  FARN000001-000097.

[6]    In fact, Hutchinson was also in possession of a copy of the Asset Purchase Agreement, as well as factual information that the sale of the molds had been consummated in October, 2015.  This information was provided to the Court during the May 24, 2017 hearing.  [Tr. 5/24/17 at p. 59].

because he had filed for bankruptcy protection. [Tr. 6/16/17 at p. 35]. When Sachs was informed that his personal bankruptcy filing did not stay the proceedings against DSC Products, and that he would still be required to appear at the May 24 hearing, Sachs immediately filed for bankruptcy on behalf of DSC Products. His attorneys nonetheless advised him to appear as ordered by the Court. [Tr. 5/24/17 at p. 16]. Sachs refused, and instructed his attorneys to inform the Court he was unable to appear because he was caring for his ailing father. In actuality, he was attending his father's 80th birthday party and could have appeared at the hearing on May 24. [Tr. 6/16/17 at pp. 41-42].[7]

At the May 24 hearing, Defendants' counsel made numerous admissions. First, Farnaes revealed DSC Products had filed for bankruptcy. [Tr. 5/24/17 at p. 13]. Additionally, Hutchinson claimed he had not learned of the dissolution of Holding LLC until April, 2017, and Farnaes claimed he only learned of it in May, 2017. [Tr. 5/24/17 at pp. 29, 35]. Collectively, the two attorneys had filed at least 74 pleadings on behalf of Holding LLC as a named defendant during the period after Holding LLC had filed for dissolution, thereby creating the false impression that Holding LLC was an on-going concern, a circumstance they blamed on Sachs. [Tr. 5/24/17 at pp. 39-40]. Farnaes admitted Defendants had failed to comply with previous discovery orders, acting in part upon Sachs's instruction that they not produce the ordered documents. [Tr. 5/24/17 at p. 45]. Hutchinson also acknowledged that Defendants had failed to produce the discovery covered by the May 4 Order, again upon instruction from his clients. [Tr. 5/24/17 at pp. 84-85]. Due to Sachs's absence and the bankruptcy stays, the scheduled settlement conference was not held.

---

[7]    Though his father did ostensibly contract a cold on May 21 while Sachs was visiting, he was not hospitalized and received no medical care.

Following the hearing, an *in camera* inquiry was held with only Farnaes and Hutchinson to determine whether their misrepresentations to the Court and failure to comply with court orders should result in a finding of contempt of court or the imposition of sanctions under Rule 37.  Based upon that hearing, the Court declined to sanction either Farnaes or Hutchinson.

The next day the Court issued yet another order that Sachs personally appear in Minneapolis to show cause why he should not be held in contempt of court. [Civil 15-2744, Docket No. 208].  Upon request of Sachs's counsel, the hearing was continued to June 16.  [Civil 15-2744, Docket No. 212].  Sachs informed the Court he had retained new counsel, Daniel N. Rosen, Esq. ("Rosen"), to represent him in the contempt matter. Rosen filed a Notice of Appearance on June 2, 2017. [Civil 15-2743, Docket No. 221].

At the June 16, 2017 hearing, Sachs appeared and testified that: (1) his personal bankruptcy had been dismissed and he did not intend to refile; (2) he intended to have the DSC Products bankruptcy similarly dismissed; and (3) he had not complied with the Court's discovery orders but was now in the process of doing so.  Sachs also admitted that on the same day the Court's summary judgment order issued, and in response to that order, he had withdrawn approximately $250,000 from his personal bank account, transferring the money to an account held in his father's name. [Tr. 6/16/17 at pp. 123-126].

## III.    ANALYSIS

### A.    The Law of Civil Contempt

A party who fails to produce documents or to supplement production pursuant to court order is subject to sanctions.  Fed. R. Civ. P. 26, 37.  A court may strike the offender's pleadings, enter judgment against the offending party, order the party and/or

its attorneys to pay reasonable attorney's fees and expenses caused by the failure, inform the jury of the offender's failure, prohibit the offender from introducing certain matters into evidence, treat the offender's failure to obey a court order as contempt of court, or impose other appropriate sanctions. Fed. R. Civ. P. 37(b) and (c); *see, e.g., Hunt v. City of Minneapolis*, 203 F.3d 524, 527-28 (2000) (dismissal with prejudice based on pattern of dilatory conduct and violation of court orders, citing "egregious violation of [party's] ongoing duty to supplement discovery" and stating the party's "multiple violations on the eve of trial burdened the court and prejudiced the defendants"), *reh'g and reh'g en banc denied* (Mar. 20, 2000).

"[C]ivil contempt sanctions, or those penalties designed to compel future compliance with a court order, are considered to be coercive and avoidable through obedience, and thus may be imposed in an ordinary civil proceeding upon notice and an opportunity to be heard." *United Mine Workers v. Bagwell*, 512 U.S. 821, 827 (1994). "Contempts such as failure to comply with document discovery . . . impede the court's ability to adjudicate the proceedings before it and thus touch upon the core justification for the contempt power." *Id.* at 833. Courts also have "broad authority through means other than contempt – such as by striking pleadings, assessing costs, excluding evidence, and entering default judgment – to penalize a party's failure to comply with the rules of conduct governing the litigation process." *Id.*

"The paradigmatic coercive, civil contempt sanction . . . involves confining a contemnor indefinitely until he complies with an affirmative command such as an order 'to pay alimony, or to surrender property ordered to be turned over to a receiver, or to make a conveyance.'" *Id.* at 828 (quoting *Gompers v. Bucks Stove & Range Co.*,

221 U.S. 418, 442 (1911)). "[T]he contemnor is able to purge the contempt and obtain his release by committing an affirmative act, and thus 'carries the keys of his prison in his own pocket.'" *Id.* (quoting *Gompers*, 221 U.S. at 442).

A civil contempt sanction is "nonpunitive and avoidable." *Id.* at 831. It is designed "to coerce the defendant to do the thing required by the order for the benefit of the complainant." *Id.* at 844 (quoting *Gompers*, 221 U.S. at 442) (Ginsburg, J., concurring in part and concurring in the judgment). "The sanction operates coercively because it applies continuously until the defendant performs the discrete, 'affirmative act' required by the court's order, for example, production of a document or presentation of testimony." *Id.*

## B.    Scope of the Bankruptcy Stay

On June 14, 2017, Sachs's personal bankruptcy filing was dismissed following Sachs's failure to file the required paperwork. [S.D. Cal. Bankr. 17-02857-CL7, Bankr. Docket No. 16]. Sachs told this Court at the June 16, 2017 hearing that he was not proceeding with the personal bankruptcy and intended to let DSC Products' bankruptcy filing, which was dismissed with prejudice on June 23, 2017, lapse, too. [S.D. Cal. Bankr. 17-3048-CL7, Bankr. Docket No. 11]. Therefore, the scope of the bankruptcy stay is unlikely to be at issue going forward. Nonetheless, the Court intends to demonstrate that all actions it took during the brief pendency of the stay were within its jurisdiction and did not violate the protections afforded to Defendants by the then-extant stay.

A bankruptcy filing triggers an automatic stay of pending claims to "collect, assess, or recover a claim against the debtor that arose" prior to the filing of bankruptcy.

11 U.S.C. § 362(a)(7). The "automatic stay sweeps broadly, enjoining the commencement or continuation of any judicial, administrative, or other proceedings against the debtor [and] enforcement of prior judgments…" *In re Gruntz*, 202 F.3d 1074, 1081–82 (9th Cir. 2000). Because both Sachs and DSC Products filed for bankruptcy, the pending litigation to recover claims against those parties was stayed.

However, the automatic stay does not protect the debtor from actions taken to "uphold the dignity of the Court and to vindicate the authority of the Court to enforce its orders." *S.E.C. v. Bilzerian*, 131 F.Supp.2d 10, 14 (D.D.C. 2001). Courts may take "whatever steps [are] necessary to ensure those persons within its power comply with its orders." *Dominic's Rest. Of Dayton, Inc. v. Mantia*, 683 F.3d 757, 761 (6th Cir. 2012)(quoting *in re Rook*, 102 B.R. 490, 493 (Bankr. E.D.Va. 1989). Defendants had repeatedly disobeyed the Court's orders and showed no good cause for their failure to comply. A court is "allowed to uphold its own orders by proceeding against a bankrupt in a contempt action…[the automatic stay] does not apply to contempt proceedings aimed at punishing a bankrupt for flouting court orders." *Smith-St. John Mfg. Co. v. Price*, No. CIV.A. 88-2018, 1989 WL 7922, at *2 (D. Kan. Jan. 9, 1989). Defendants disobeyed a number of court orders, including an order to appear, and multiple orders to compel discovery. Because such disobedience implicates this Court's dignity, this Court retained the authority to hold Defendants in contempt until they complied with this Court's orders.  All orders issued and proceedings conducted during the short-lived stays were pursuant to that authority.

CASE 0:15-cv-02743-JRT-DTS    Doc. 233    Filed 06/29/17    Page 12 of 22

C.    **Failure of Sachs to Appear**

On May 10, 2017, Sachs was ordered to appear in person on May 24. [Civil 15-2743, Docket No. 196 at 2]. Following Sachs's filing for personal bankruptcy, the Court reiterated that Sachs was still required to appear on May 24, both in his personal capacity and as an officer of DSC Products. [Civil 15-2743, Docket No. 204 at 4].

On May 18, Sachs emailed his counsel that he was "100% not going" to the hearing because he believed his personal bankruptcy exempted him from compliance with the Court's order. [Civil 15-2744, Docket No. 240, Exhibit No. 3 at 2; Exhibit No. 5 at 1]. When reminded two days before the hearing that he was required to appear, Sachs reiterated that he would not attend. [Civil 15-2744, Docket No. 240, Exhibit 11 at 1]. On the afternoon of May 22, Sachs for the first time raised his father's ill health as an excuse for not appearing. [Civil 15-2744, Docket No. 240, Exhibit No. 13 at 1]. Sachs did not appear at the May 24 hearing; his counsel cited Sachs's father's sickness to excuse Sachs for his failure to appear. [Tr. 5/24/17 at p. 7].

Sachs has failed to demonstrate his nonappearance was dictated by a true family emergency. His emails establish he had no intention of appearing in the first place. At the June 16 hearing, at which he did appear, Sachs admitted he had not taken his father to the hospital, had not provided him with any medication, and was not staying overnight with his father – all facts which belie Sachs's contention that the severity of his father's illness required his attendance. [Tr. 6/16/17 at pp. 42-46]. Additionally, Sachs had departed Florida for San Diego around 5:00 p.m. on May 23, 2017, the day before the hearing. [Civil 15-2744, Docket No. 240, Exhibit 5 at 3; Tr. 6/16/17 at p. 40]. Flights from San Diego to Minneapolis on May 23 departed as late as 10:30 p.m., which would

have allowed Sachs to timely appear at the hearing the next morning.[8]  Therefore, even assuming an emergency required Sachs's presence in Florida, that "emergency" ended the day before the hearing in time for Sachs to have appeared on May 24.   Under 18 U.S.C. § 401, this Court may hold in contempt parties who disobey its "lawful writ, process, order, rule, decree or command." Because Sachs deliberately failed to appear in direct violation of a lawful court order, he was in contempt of court at the time. He has subsequently purged himself of this contempt by appearing at the June 16, 2017 hearing.

### D.    Discovery Orders

Defendants repeatedly failed to comply with the Court's discovery orders. On April 5, 2016, 4Brava moved to compel discovery [Civil 15-2744, Docket No. 64], which motion the Court granted.  [Civil 15-2744, Docket No. 89 at 1].  Defendants produced some, but not all, responsive documents covered by that order.

On April 21, 2017, 4Brava again moved to compel much of the same discovery. [Civil 15-2744, Docket No. 147].  This motion came seven weeks before the June 12, 2017 trial-ready date, and three weeks after Chief Judge Tunheim's March 30, 2017 summary judgment order.  [Order & Mem. 58-59 ¶ 2, Civil 15-2744, Docket No. 131]. The summary judgment order specifically directed Plaintiffs to wind up Three Two Eight's affairs and file termination papers with the Minnesota Secretary of State by June 30, 2017. *Id.* at 59 ¶ 2.e. & f.  Thus, in their April 2017 Motion to Compel, Plaintiffs

---

[8]    Flights on both Delta and United left San Diego shortly after 10:30 p.m. on May 23, 2017 and after brief layovers in Chicago, landed in Minneapolis just after 8:00 a.m. on May 24, 2017. The Court takes judicial notice of these published flight times per F.R. Evid. 201. While Sachs had earlier claimed it was impossible to appear on May 24, 2017, Sachs acknowledged at the June 16, 2017 hearing the existence of flights that would have gotten him to the May 24 hearing on time. [Tr. 6/16/17 at p. 42].

asked the Court to order Defendants to supplement their previously inadequate production of documents as needed for trial and for the windup of Three Two Eight. [Civil 15-2744, Docket No. 149 at 1-3, 7-8].

The Court granted 4Brava's motion, in relevant part,[9] and ordered Defendants to produce the following information by 5:00 p.m. Central Time on May 15:

> a. Updated financial information regarding tumbler revenue, including but not limited to statements from bank and investment accounts, bookkeeping and accounting information, purchase orders, check copies, and the like, through the present date and ongoing through the end of trial;
>
> b. Updated information regarding injection molds and related parts and equipment that Defendants had built in late 2015 and early 2016; and
>
> c. Updated information regarding tumbler marketing and sales-related efforts, including but not limited to contracts for prospective and future sales as well as past sales.

[Order ¶ 3, Civil 15-2744, Docket No. 160]. The Order set a telephone status conference for May 17, 2017 and stated that, if Defendants again failed to produce the information, Plaintiffs could move for sanctions and other relief, including civil contempt. *Id.* ¶¶ 2-3.

Defendants did not produce any documents or information in violation of this order. [5/17/17 Telephone Status Conference Tr. 8, Docket No. 218]. Sachs filed for

---

[9]    The only request denied by the Court was 4Brava's request for certain instructions or exclusions of evidence at trial. The Court deemed it premature but preserved 4Brava's right to renew the request in future pretrial or trial proceedings. [Order ¶ 6, Civil 15-2744, Docket No. 160].

personal bankruptcy on May 15, 2017 which temporarily[10] stayed certain actions against him personally but not against the two corporate entity defendants. [Civil 15-2744, Docket No. 192]. On May 23, 2017, DSC Products filed for bankruptcy.[11] In the meantime, it had come to the Court's attention that Holding LLC – the only Defendant who had not filed for bankruptcy – in fact no longer existed, having dissolved in 2015.

During the May 17 telephone conference, the Court asked Defendants' counsel about their failure to produce documents responsive to the May 4 order. Hutchinson told the Court he had no documents in his physical possession; had no "custody or control or access to any responsive documents;" that "there is no document repository;" and that he had "not been involved in any document collection or production in this case." [Tr. 5/17/17 at p. 17]. Hutchinson stated that, at one point, he may have seen an email or two that included some documents that might be responsive, but he did not believe he still had those emails. *Id.* at 18. Farnaes told the Court he possessed "one single document" but lacked consent from Defendants to produce that document. *Id.* at 15-16. Both Hutchinson and Farnaes told the Court they were not taking the position that responsive documents did not exist "somewhere." *Id.* at 20-21.

---

[10]     The stay was vacated when the bankruptcy court dismissed Sachs's petition on June 14, 2017 due to his failure to provide the required financial, income and asset information by June 12, 2017 a deadline that had already been extended once at Sachs's request [S.D. Cal. Bankr. No. 17-02857-CL7, Bankr. Docket Nos. 8, 11, 13, 16].

[11]     S.D. Cal. Bankr. No. 17-03049-LT7.  DSC Products, Inc.'s financial statements were due to the bankruptcy court on June 6, 2017 [Bankr. Docket No. 1].  On June 5, Sachs requested an extension until June 20 on behalf of the corporation, which the court granted. *Id.* at 6, 9.  Despite the extension, the company failed to file any documents with the bankruptcy court by June 20 and the bankruptcy court has dismissed this petition as well.

At the May 24 hearing, Farnaes informed the Court he had discussed the May 4 Order with Sachs and had told Sachs that he [Farnaes] possessed responsive documents. Sachs told him not to produce them. [Tr. 5/24/17 at pp. 47-48]. Following the telephonic status conference, Farnaes located drafts of documents in addition to the "one document" he disclosed during that conference. *Id.* at 51-52. Farnaes told the Court that he possessed no other responsive documents. *[id.* at 51-54]; and that Defendants' original document production in 2016 was accomplished through the Basecamp website in an account set up by Sachs in which Sachs uploaded documents and then provided parties access. *Id.* at 53-54. Hutchinson told the Court that, after the May 17 status conference, he searched and located one email chain covered by the attorney-client privilege with one attached document that was not privileged [*id.* at 58], all of which he then provided to the Court at the May 24 hearing for *in camera* review [*id.* at 59]; and that he had no other responsive documents. *Id.* Farnaes and Hutchinson both told the Court they were not aware of the existence of other responsive documents, but that they assumed certain types of responsive documents, such as bank records, must exist somewhere. *Id.* at 54, 61.

At the June 16 hearing, Sachs admitted that:

- Defendants had not produced the Asset Purchase Agreement with Thermo-Serv until the Court ordered Farnaes to produce it, and that he had directed Farnaes not to produce it. [Tr. 6/16/17 at pp. 65-66];

- Other documents relating to the molds were not produced until after June 1, 2017 [*id.* at 66];

- Banking records for DSC Products and Holding LLC had only been produced since June 1, 2017 and there was no reason the records could not have been produced earlier [*id.* at 71-73];

- Tumbler invoices had only been produced since June 1, 2017 and there was no reason they could not have been produced earlier [*id.* at 73];

- He did not know whether he had any shipping documents [*id.* at 74];

- Communications with retailers had only been produced since June 1, 2017 and there was no reason they could not have been produced earlier [*id.* At 75];

- Marketing communications regarding tumblers had only been produced since June 1, 2017 and there was no reason they could not have been produced earlier [*id.* at 76];

- Additional certain financial information had been produced since June 1, 2017 and there was no reason it could not have been produced earlier [*id.* at 76-77];

- He had not searched Dropbox, set up for Amazon transactions, for any relevant documents [*id.* at 80-81];

- He had produced emails since June 1, 2017 and there was no reason they could not have been produced earlier [*id.* at 82-83];

- He was "not sure" whether he had ever told his bookkeeper not to produce records in response to a subpoena or court order [*id.* at 97]; and

- Defendant had not produced records for a Bank of America account because Sachs did not think the account was related to the Court's Orders, despite his testimony that the $190,000 wired by Thermo-Serv for purchase of the injection molds might have been deposited into that Bank of America account. *Id.* at 98-99.

Notwithstanding the sometimes contradictory statements to the Court, it is clear that Defendants made only partial production of documents covered by the Court's 2016 Order, and no production at all by the deadline set forth in the Court's 2017 discovery order. Since that deadline to the present, Farnaes has produced 97 pages of documents [Order 5/23/17, Civil 15-2744, Docket No. 205; Tr. 5/24/17 at pp. 45-46, 50]; Hutchinson provided an email chain and attachment (described in the preceding paragraph) [Tr. 5/24/17 at pp. 58-59]; and Sachs produced some documents and

brought others to the June 16 hearing [Tr. 6/16/17 at pp. 8-9, 91], at which Rosen represented that additional responsive documents would be produced, likely by June 23, 2017.[12] *Id.* at 10.

Defendants are in contempt for their repeated failures to comply with the Court's discovery orders. Defendants can purge this contempt by producing all responsive information and documents. While some documents have been produced, Defendants have not yet demonstrated full compliance, and thus have not fully purged this contempt at this time.

### E.    Summary Judgment Order

On March 30, 2017, Chief Judge Tunheim issued a 59-page Order and Memorandum granting Plaintiffs' motion to dissolve Three Two Eight and ordering Plaintiffs to wind up the company's affairs, pay creditors, distribute any additional funds pursuant to Minnesota law, and file termination papers with the Secretary of State by June 30. *Id.* at 59 ¶ 2.e. & f. The Court found Defendants jointly and severally liable as alter egos and ordered them to pay funds to Plaintiffs as set forth in the Memorandum to enable Plaintiffs to carry out the wind-up and dissolution. *Id.* at 38, 58 ¶ 2.c. & d. The Court specifically referenced the Exhibit 57 "unchallenged expert report." *Id.* at 38. The Court imposed a deadline of April 13, 2017 to relinquish the funds, which was later extended to April 27. *Id.* at 58 ¶ 2.d.

Defendants failed to comply with the Order to pay the funds to Plaintiffs. Instead, Sachs withdrew hundreds of thousands of dollars out of his account shortly after the Order was filed, transferring approximately $250,000 into an account held by his father.

---

[12]    As of June 29, 2017, the Court is unaware whether these additional responsive documents have been produced.

[Tr. 6/16/17 at pp. 123-26]. On April 13, the date originally set for payment, Defendants moved to clarify the Court's Order and to extend their payment deadline because they were "unable to marshal the funds for the payment in that short time frame." [Civil 15-2744, Docket Nos. 134, 135].

Defendants again failed to comply with the Court's Order to make payment by April 27. Thus, on May 10, 2017, Plaintiffs' brought a Motion for Contempt and For Partnership Asset Protection Order, asking the Court to find Defendants in contempt for failing to pay $893,220.12 in violation of the Court's March 30, 2017 and April 13, 2017 Orders, and pointing out that Defendants had presented no evidence of insufficient funds to pay the amount, *i.e.,* no inability to comply with the Orders. [Civil 15-2744, Docket Nos. 172, 174]. Plaintiffs asked that Sachs be incarcerated as a civil contempt sanction to coerce compliance with the Court's previous orders because Defendants had flouted those orders multiple times, including the specific orders to pay money to Plaintiffs. [Civil 15-2744, Docket No. 174 at 3].

Eventually, as discussed above, in response to Plaintiffs' efforts to force payment, Sachs filed for personal and corporate bankruptcy protection, which petitions have since been dismissed. Sachs admitted the stay had not provided the protection from the Court's orders he believed it would. [Tr. 6/16/17 at pp. 21-22, 47-49].

Moreover, the partial bank records produced recently reveal transactions involving substantial amounts of money, including the $250,000 Sachs transferred to his father's account in response to the Court's payment Order. [Tr. 6/16/17 at pp. 123-26]. Because Sachs was in contempt of the Court's payment Order [*id.* at 175], at the conclusion of the June 16 hearing, the Court ordered him to pay $572,000 to Plaintiffs

by the close of business on June 19 [*id.* at 176], or face immediate incarceration. *Id.* at 179. Plaintiffs' counsel has now confirmed that Sachs paid this amount. However, this payment does not purge Sachs's full contempt, as he still owes the remainder of the $893,220.12 pursuant to the March 30 order and subsequent orders. Sachs can purge the contempt by paying the remaining amount or by providing evidence to establish that he is in fact unable to pay.

### F. May 19, 2017 Order for Defendants to Pay Plaintiffs' Attorneys' Fees

In its prior sanction order, this Court ordered DSC Products and Holding LLC to pay $7,700.05 in attorney's fees to Plaintiffs. [Civil 15-2744, Docket No. 198]. As of the June 16 hearing, the money had not been paid. However, in response to this Court's verbal order at the conclusion of the June 16 hearing, Sachs paid this money, thereby purging himself of this contempt.

### RECOMMENDATION

For the reasons set forth above, IT IS RECOMMENDED THAT:

1.      Defendant Sachs be found in contempt of court for his failure to appear as ordered at the May 24, 2017 hearing, of which contempt he purged himself by appearing at the June 16, 2017 hearing.

2.      Each Defendant be found in contempt of court for failure to provide the discovery ordered by this Court in May 2016 and again in May 2017. [Civil 15-2744, Docket No. 160]. Defendants can purge themselves of contempt by fully complying with these orders.

3.      Defendant Sachs be found in contempt of court for failing to assist in the wind up of Three Two Eight's company affairs by providing financial information and

documents, issuing payments to remaining creditors and distributing additional funds pursuant to Minn. Stat. Ch. 322B. Sachs has partially purged himself of contempt by remitting a partial payment of $572,000 to Plaintiffs on June 20, 2017.

4.    Chief Judge John R. Tunheim's March 30, 2017 Order provided Sachs three months to execute and file Three Two Eight's termination papers. Given the circumstances the Court recognizes that the windup of Three Two Eight will not occur by June 30, 2017, and recommends that the deadline be extended to August 31, 2017. Sachs is required to produce all information necessary to facilitate the windup of Three Two Eight.

5.    Defendants be found in contempt for failing to pay Plaintiffs' attorneys' fees as ordered by the Court [Civil 15-2744. Docket No. 198], of which contempt they purged themselves by paying the fees on June 19, 2017.

6.    Discovery will be reopened regarding the newly-produced documents and as concerns the dissolution of Defendant DSC Products Holding, LLC. Discovery is not stayed because Sachs's personal bankruptcy and the bankruptcy of Defendant DSC Products, Inc. have been terminated. The Court will issue a new scheduling order after it conducts a settlement conference. A separate Order for Settlement Conference will issue shortly.

7.    As ordered at the hearing, Defendants have provided the Court with complete access to the document repository "Basecamp" so that the Court can assure itself that discovery has been completed.

8.      Defendants' counsel shall review all e-mails in Defendants' possession for production to Plaintiffs and/or placement on a privilege log no later than July 14, 2017.

Dated:      June 29, 2017


*s/ David T. Schultz*
DAVID T. SCHULTZ
United States Magistrate Judge


**Filing Objections:**  This Report and Recommendation is not an order or judgment of the District Court and is therefore not appealable directly to the Eighth Circuit Court of Appeals.

Under Local Rule 72.2(b)(1), "a party may file and serve specific written objections to a magistrate judge's proposed finding and recommendations within 14 days after being served a copy" of the Report and Recommendation.   A party may respond to those objections within 14 days after being served a copy of the objections.  LR 72.2(b)(2).  All objections and responses must comply with the word or line limits set for in LR 72.2(c).